## Stanley License

*Morris Passon* and *Henry N. Fineman*, for petitioner.

*Frank Gilbert* and *Arlen Specter*, for Commonwealth.

SPORKIN, J., November 1, 1963.—On June 28, 1963, we entered an order granting the petition of William Stanley for renewal of his private detective license, notwithstanding opposition by the Commonwealth to the granting of the said petition. Thereafter, the Commonwealth filed a petition for reargument and for a rule to show cause why the renewal granted by this court should not be suspended so long as William Stanley continues to hold office as constable.[1] Because of the importance of the issues here involved, we granted the reargument and rule to show cause.

The question now before us is whether the private detective license of William Stanley should be suspended.

---

[1] The petition for reargument was predicated on the assertion by the district attorney that the applicable law and precedents had not been adequately presented at the earlier hearing before us.

The pertinent facts, which are not in dispute, are:
Stanley has been a licensed private detective since February, 1950; his biennial terms have been successively renewed; on November 7, 1961, he was elected constable for the Forty-fifth Ward of the City of Philadelphia, qualified for said office and from and after January, 1962, has been performing the duties of his office as constable; at the same time he has been conducting his business as a private detective.

After Stanley qualified for and assumed his office of constable, the district attorney, on May 1, 1962, filed a petition to revoke Stanley's license as private detective, which was heard by the quarter sessions court (Gleeson, J.), and on June 28, 1962, the petition to revoke was dismissed, and the rule to show cause granted thereon was discharged. The memorandum opinion filed by Judge Gleeson gave the following reasons for the entry of the court's order: (a) there is no statutory prohibition against a constable holding a private detective's license, and (b) there was no evidence before the court showing that Stanley abused his dual offices.[2]

Following the filing by William Stanley of his petition for renewal of his private detective license in April, 1963, the writer of this opinion heard argument thereon. As previously noted, we granted the renewal. In the reargument petition now before us, for *suspension* of Stanley's private detective license so long as he continues to hold the office of constable, it is contended by the Commonwealth that the office of constable and the

---

[2] A reading of the brief submitted by the district attorney in support of the Commonwealth's argument on the petition before Judge Gleeson reveals that the legal position now taken by the Commonwealth that the office of constable and the business of private detective should be declared incompatible as a matter of public policy, was not argued extensively, nor were the authorities now cited called to the court's attention.

business of private detective should be declared, as a matter of law, incompatible on grounds of public policy, regardless of absence of express statutory prohibition and without any allegation or proof that Stanley has abused his license. Stanley has filed an answer denying the existence of any incompatibility and questioning this court's power to declare any incompatibility.

Thus, we come to a consideration of the issue as it is now clearly presented to this court for the first time.

It has long been recognized in Pennsylvania that where incompatibility is obvious and offends against public policy, it is not only the right but the duty of the court to so declare. It is said in In re Monroe County Auditors' Report, 84 D. & C. 278, 283, 284 (1951):

"It seems however to be generally accepted as good law that two offices whose functions are inconsistent, are to be regarded as incompatible or that where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one incumbent to retain both, they are incompatible."

"Even in the absence of express prohibitions against the holding by one person of more than one office at the same time, there is a well-established limitation on the right so to do. This limitation operates upon offices that are in their nature incompatible, for it is a settled rule of the common law that a public officer cannot hold two incompatible offices at the same time. The rule is founded upon the plainest principles of public policy. It is imbedded in the common law and has obtained from very early times. Its correctness and propriety are so well established as to have been assumed without discussion in many cases in which the matter of common law incompatibility has arisen": 42 Am. Jur. Public Officers §59.

In comparing the functions, powers and limitations of the two offices now under consideration, we find that, although a private detective, as the term indicates, is a private occupation, no one may engage in that business unless he first obtains a license from the court of quarter sessions under the provisions of the Act of August 21, 1953, P. L. 1273, 12 PS § 12, et seq. The scope of a "Private Detective Business" is strictly limited to 11 activities, including investigations and the furnishing of watchmen or guards to protect persons or property: Section 2 of the act, supra.

To qualify for appointment as private detective, an applicant, in addition to satisfying the court as to good moral character, must establish that, for a period of at least three years, he had been regularly employed as a detective, or had been a member of the United States investigational service, or a sheriff, or a member of a city police department of a rank higher than patrolman.

Then, too, a private detective is permitted and expected to receive compensation from those who employ him in accordance with their contract.

On the other hand, a constable, in Philadelphia, may be any citizen who is elected to that public office by the voters of the ward wherein he resides. His duties and powers are clearly defined both by statute and numerous decisions.

"Generally, a constable is an officer of a municipal corporation, usually elected, whose duties are similar to those of the sheriff, although his powers are less and his jurisdiction smaller. He is to preserve the peace, execute process of magistrate's courts and of some other tribunals, [and] serve writs": 80 C.J.S. Sheriffs and Constables §3.

A constable may be directed by the court of quarter sessions to report to the court violations of the law, and may be directed to investigate such violations and

conditions: Act of May 31, 1919, P. L. 357, sec. 3, 13 PS §44.

A constable's compensation and fees, for the services he renders are strictly limited by legislation. Cf. Act of July 20, 1917, P. L. 1158, sec. 1, as amended, 13 PS §61.

Among the obvious inconsistencies between the office of constable and the business of private detective, we note the following:

1. A constable is authorized and required to execute warrants of arrest, whereas a private detective, by the provisions of the Act of August 21, 1953, supra, has been deprived of any right to execute warrants of arrest, a right which existed under the earlier Act of May 23, 1887, P. L. 173, now repealed and superseded.

2. A constable, as a peace officer, has the right and duty to preserve the public peace, including the right to arrest on sight any person engaged in a breach of the peace, as well as persons charged with vagrancy or drunkenness: In re Borough High Constables, 32 Del. Co. 335 (1944) ; McCullough v. Commonwealth, 67 Pa. 30 (1870). A private detective, however, has no more authority to make arrests on sight than any other private citizen.

3. While a constable has the right to carry a deadly weapon concealed upon his person, being specifically exempted to do so by the provisions of the Uniform Firearms Act of June 24, 1939, P. L. 872, as amended, 18 PS § 4628(e), a private detective, on the other hand, is bound by the provisions of said Uniform Firearms Act, to the same extent as any other private citizen.

4. A constable is specifically required by the Pennsylvania Election Code to be present at the polling places of his ward during each primary and general election for the purpose of preserving the peace: Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333,

sec. 1207, as amended, 25 PS §3047. Failure to render aid and assistance to an election board, when requested, by the making of arrests or maintaining the peace, subjects the constable to criminal sanction (Pennsylvania Election Code, supra, sec. 1811, 25 PS § 3511), whereas a private detective has no rights at or about a polling place beyond those of any other qualified elector.

In addition to the foregoing, it is apparent that a private detective, who is also armed with the official powers of a constable, a law enforcement officer, is vested with authority which could readily be misused while he is performing services as a private detective. Indeed, it is difficult to draw a line of demarcation as to when such an individual would be acting in either of these capacities. The mere possibility of such abuse of authority makes such dual activities repugnant to public policy, and whenever such a situation has come to the attention of our courts, they have not hesitated to declare inconsistency and incompatibility.

Thus, in De Rose's Detective License, 10 D. & C. 654 (1927), it was held that the holding of a detective's license by a constable or police officer is incompatible. Though the applicant in that case was a person of spotless character, the court said:

". . . (T)he function of a private detective is to make investigations for hire or reward and . . . private detectives are not supposed to perform the functions of a constable or of a police officer, but . . . their services shall be of a private nature, for which they are permitted and expected to receive compensation from those who employ them, while for a city police officer to do so would constitute extortion. See, also, Quatello's Detective License, 9 D. & C. 74. If the petitioner were granted a license as a private detective, it would be difficult at all times to determine whether he was acting in that capacity or in his capacity as

a city policeman. Therefore, it seems to us that the position or office of city policeman and of a private detective are incompatible."

Similarly, in Anderson License, 80 D. & C. 555 (1952), where, after a private detective license was issued, the licensee was appointed an assistant county detective, on a part time basis, the court said:

"In consequence, that portion of the licensee's time which is spent on official business is indistinguishable from the time spent on the business of his clients and there is no practical way in which such a division could be made or enforced. In our considered opinion it is against public policy to continue a private detective license in one who has obtained official standing as a public officer. Such duality permits access to places, records and information which ordinarily would be closed to a private investigator, and therefore gives to such investigator an advantage which he ought not to have. Private detectives are not public officers: Commonwealth v. Quinn, 144 Pa. Superior Ct. 400, 409, 410. They have no more right to carry firearms or other means of self-protection than ordinary citizens, nor should they be permitted to wear badges or insignia similar to that of public policemen: In re Licensed Detectives, 60 D. & C. 544, 546. Therefore, to continue a license in one who has such rights because of official position would be to create a hybrid, semi-official detective such as is not countenanced by any law known to us. We shall, therefore, withhold approval of the proffered bond and suspend the applicant's license during his tenure as assistant county detective.

"There has not been the slightest hint that the applicant has not conducted himself with decorum. Our action is taken because of the dictates of public policy as above referred to."

Likewise, in Niehoff License, 9 D. & C. 2d 410 (1956), the court said, page 413:

"It is our opinion that applicant can well be criticized for some of his actions. He is not a police officer or a constable and has no right, not possessed by an ordinary citizen, to make an arrest: In re Licensed Detectives, 39 Berks 270, 60 D. & C. 544. While the Act of May 23, 1887, P. L. 173, sec. 3, empowered private detectives to serve warrants in criminal cases, that act has been repealed by the Private Detective Act of August 21, 1953, P. L. 1273, sec. 21. Private detectives no longer have any authority to serve warrants, and the court strongly disapproves of their being in any way connected with the service of warrants or the actual arrest of individuals charged with crime. The function of these detectives is to make investigations for hire as set forth in sections 2 and 3 of the Private Detective Act of 1953, supra. They should not be concerned with the outcome of cases investigated by them and in no respect should have anything to do with settlements, compromises or prosecutions except as witnesses who are called upon to testify to facts learned from their investigations."

It is clear, therefore, that the common law, as interpreted by our courts, forbids the holding of offices with inconsistent or incompatible duties. It is likewise clear that the duties of a private detective are inconsistent with those of a constable or peace officer.

Petitioner, Stanley, relies upon the case of McClain v. Lawrence County, 14 Pa. Superior Ct. 273 (1900), as authority for the principle that a private detective may, and is permitted to, act as constable. From a reading of this case we cannot see how such a conclusion could be reached; it is clearly inapplicable. There, it was held that a justice of the peace may issue a warrant of arrest to a licensed detective, who, when he executes the warrant, is entitled to the same fee as a constable for his services. It is to be noted that this decision was handed down in 1900, when the

statutory provisions covering private detectives (Act of May 23, 1887, P. L. 173) gave to licensed detectives, section 3, "the power to serve warrants in criminal cases." The Act of 1887 has been repealed and superseded by the Act of 1953, supra, and the power to make arrests on warrants is no longer given to private detectives.

In support of his contention that this court should not declare his dual offices incompatible, Stanley cites Commonwealth ex rel. Schermer v. Franek, 311 Pa. 341 (1933), and Commonwealth ex rel. Fox v. Swing, 409 Pa. 241 (1962). Although these cases hold that the Pennsylvania Constitution provides that the legislature may declare what offices are incompatible [3] and that courts have no such power where the legislature has failed to act, they are distinguishable from and do not control the situation at bar because the Schermer and Fox cases deal with alleged incompatibiilty of two *elective* offices and not with the question of incompatibility between an elective office and an appointive office, as is presented in the case before us.[4]

We can find no indication in either Schermer or Fox that the common law doctrine of incompatibility between *elective* and *appointive* offices may not be applied by the courts as a matter of public policy, and we are, accordingly, convinced that this court has the power and the authority to declare the offices of constable and private detective to be incompatible on the basis of public policy. To require the legislature to declare the existence of incompatibility in every possible combination of public office and private employment would, in

[3] Article XII, sec. 2, reads: "The General Assembly may by law declare what offices are incompatible."

[4] The offices in Schermer and Fox were elective and created by the legislature. In the Schermer case the offices in issue were justice of the peace and mayor of a city of the third class. In Fox, the offices involved were township treasurer and county commissioner.

our opinon, tend to create a burdensome and most difficult task. Situations of this character must find solution within the permissible power of the courts.

Nor are we impressed with the argument that in declaring the offices here involved as incompatible, and to deny the applicant his private detective's license, would in effect be "overruling" the order of Judge Gleeson dismissing the district attorney's petition to revoke Stanley's then current private detective license. As previously noted, the legal position now stressed by the district attorney and supported by persuasive authorities, was not adequately called to the attention of our brother judge.[5]

Finally, petitioner contends that as a matter of comity a judge of coordinate jurisdiction, except in the most compelling circumstances, should not overrule decisions of associates based on the same set of facts: Citing Fried v. Feola, 129 F. Supp. 699; TCF Film Corp. v. Gourley, 240 F. 2d 711; United States v. Skurla, 126 F. Supp. 713; and Schmid Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 120.

With this contention, we cannot agree. As applied to coordinate courts, the rule of comity does not require "a court to abdicate its own individual judgment and [is] applicable only where the court is in doubt as to the soundness of its views, for the purpose of establishing uniformity of rulings and avoiding confusion": 21 C.J.S. Courts §200.

Furthermore, the language used in United States v. Wheeler, 256 F. 2d 745, 747 (1958), is most appropriate here:

"In other words there are occasional situations in which a judge cannot avoid placing himself in a position which may require him to reconsider a point al-

---

[5] See footnote 2, supra.

ready earlier decided in the same case by another judge of the same court."

It is significant to note that the district attorney is not urging that Stanley's private detective license be revoked. The petition now before us merely asks that the license be suspended so long as Stanley continues to hold the office of constable. In light of the above, it is abundantly clear that the Commonwealth has demonstrated sufficient grounds for the entry of such an order. Accordingly, we make the following

### *Order*

And now, to wit, Nov. 1, 1963, it is ordered and decreed that unless William Stanley shall, within 15 days of the date of this order, file a proper resignation of his office as constable for the Forty-fifth Ward of the City of Philadelphia, the private detective license now held by him and renewed by this court on June 28, 1963, shall be and is suspended so long as the said William Stanley continues to hold his office as constable.